Michele Anderson-West (9249)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com

*Attorneys for Plaintiff*

---

**IN THE THIRD JUDICIAL DISTRICT COURT**
**SALT LAKE COUNTY-SALT LAKE CITY**

| | |
|---|---|
| MAYGEN RICHARDSON, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| THE MONEY SOURCE INC., | |
| Defendant. | |

Plaintiff Maygen Richardson, by and through her undersigned counsel, brings this complaint against The Money Source Inc. ("TMS") and alleges causes of action arising from (1) breach of contract and (2) breach of the duty of good faith and fair dealing as follows:

### JURISDICTION AND VENUE

1.      Ms. Richardson resides in Salt Lake City, Salt Lake County, State of Utah.

2.      TMS is a foreign corporation doing business in Salt Lake City, Salt Lake County, State of Utah.

3.      Jurisdiction and venue are appropriate in this court pursuant to Utah Code Annotated § 78B-3-304(2) as the incidents giving rise to this action occurred in Salt Lake City, Salt Lake County, State of Utah.

1

## FACTUAL ALLEGATIONS

4.    On June 7, 2018 at 12:11 PM, TMS sent Ms. Richardson an email with an offer of employment, Confidentiality and Non-Solicitation Agreement and Background Investigation Acknowledgment. (A true and correct copy of the June 7, 2018 email is attached hereto as Exhibit 1)

5.    The Offer of Employment stated Ms. Richardson would receive a starting base wage of $125,00.00 per year. (A true and correct copy of the Offer of Employment is attached hereto as Exhibit 2)

6.    The Offer of Employment stated Ms. Richardson would be eligible for bonus of up to 15%-30% of her annual salary upon successful completion of goals and objectives per quarter. (Exhibit 2)

7.    The Offer of Employment stated Ms. Richardson would work remotely with a start date of Monday June 25, 2018. (Exhibit 2)

8.    The Offer of Employment stated "[y]our signature below also indicates you are free to accept our employment offer and are not, in any way, limited, restricted or inhibited by any previous agreement(s) from former employer(s) containing restrictive covenants that may or actually impede upon or adversely affect your ability to work for us or contract with either the Company or any of your former customers or prospective customers."

9.    Ms. Richardson gave her former employer her two weeks' notice that she was taking a position with TMS and then electronically signed and dated her acceptance of the Offer of Employment, Confidentiality and Non-Solicitation Agreement and acknowledgement for a

background check, and upon hitting "Enter" the agreements were electronically transmitted to TMS on June 7, 2018.

10.     Ms. Richardson followed then followed the link to complete her background investigation and received an email dated June 7, 2018, 12:56 PM with a copy of her background report. (A true and correct copy of the email is attached hereto as Exhibit 3)

11.     On Thursday, June 21, 2018, at 12:56 PM, Ms. Richardson received an email from TMS advising her "You are set up!!!" and at 1:57 PM telling her "Welcome aboard" and provided her credentials. (A true and correct copy of these emails are attached hereto as Exhibit 4)

12.     The next day, at 3:01 PM, TMS sent Ms. Richardson an email rescinding her offer of employment. (A true and correct copy of the email is attached hereto as Exhibit 5).

<u>**FIRST CAUSE OF ACTION**</u>
(***Breach of Contract***)

13.     The preceding paragraphs are incorporated herein by reference.

14.     TMS and Ms. Richardson entered into a valid and binding Employment Contract on June 7, 2018.

15.     Ms. Richardson relied on the promises made in the employment contract, and with the understanding she would start work remotely for TMS on June 25, 2018, earning $125,000.00 per year, plus bonuses, Ms. Richardson quit her lucrative job.

16.     Ms. Richardson quit her previous job in order to fulfil her promise under the employment contract-that she was ready and available to work for TMS.

17.     TMS did not perform as it promised under the employment contract, leaving Ms. Richardson without a job and financially devastated.

3

18.     Ms. Richardson has particularly been damaged because she had earned a very lucrative salary with the ability to work remotely from her home in Salt Lake City.

19.     Ms. Richardson has been damaged by TMS's breach of the employment contract in an amount of not less than $125,000.00 but in an amount to be determined at trial.

20.     Ms. Richardson is entitled to any other relief as the Court deems fair and just.

## SECOND CAUSE OF ACTION
### *(Breach of the Covenant of Good Faith and Fair Dealing)*

20.     The preceding paragraphs are incorporated herein by reference.

21.     Contracts, including the Employment Contract contain an implied covenant of good faith and fair dealing.

22.     TMS breached the duty of good faith and fair dealing with regard to the Employment Contract by purposely destroying Ms. Richardson's right to receive the fruits of the agreement, leaving her without a job and financially devastated.

23.     As a result of TMS's breach of the duty of good faith and fair dealing, Ms. Richardson has been damaged and has suffered injury in an amount to be determined at trial.

## DISCOVERY DESIGNATION

Discovery designation for this matter is pursuant to Tier II, Utah R. Civ. P. 26(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

a.      For an order awarding Plaintiff compensation equal to the wage she lost as a result of Defendant's breach;

4

b.      For an order awarding Plaintiff costs and attorneys' fees incurred due to Defendant's breach of the Agreement;

c.      For an order awarding Plaintiff pre-and post-judgment interest as allowed by law; and;

d.      For such other and further relief as the Court deems just and equitable.

Respectfully submitted this 15th day of August 2018.

/s/ Michele Anderson-West
Michele Anderson-West
STAVROS LAW, P.C.
*Attorneys for Plaintiff*

EXHIBIT 1

--------- Forwarded message ---------
From: **Bryan Crofford via DocuSign**<dse_NA3@docusign.net>
Date: Thu, Jun 7, 2018 at 12:11 PM
Subject: Offer of Employment
To: Maygen Richardson <MAYGENRICHARDSON@gmail.com>



THE MONEY SOURCE



Bryan Crofford sent you a document to review and sign.

**REVIEW DOCUMENTS**

 **Bryan Crofford**
Bryan.Crofford@TheMoneySource.com

Hi Maygen,

We are pleased to extend the attached offer of employment for you to join the team at TMS!

Please review and sign the enclosed documents and let us know if you've got any questions. Additionally, you must follow the link below to complete your background investigation process through our vendor,
Checkr:https://apply.checkr.com/apply/themoneysource/3e44409e4655

We look forward to working with you.

Best,

Bryan Crofford
Director, People Team
925.433.0512

Powered by **DocuSign.**

EXHIBIT  2

DocuSign Envelope ID: C F3E4D84F68-4B3B-BD4D-6D4E54049B70



June 7, 2018

Attention:   Maygen Richardson

**RE:     OFFER OF EMPLOYMENT**

Dear Maygen:

I am pleased to confirm that after careful consideration, The Money Source Inc. ("Company") has decided to extend to you an offer of employment. The details of your offer are as follows:

Your position with the Company will be <u>VP, Servicing Risk Management - Reporting</u> and you will be expected to perform the job duties associated with that position, as described during the interview process and as modified by the Company from time to time. As discussed during the interview process, your compensation package for this position will be paid in the following manner:

- **Starting Base Pay: $125,000.00** per base annum, paid on a semi-monthly basis. This position is classified as full-time, exempt.
- **Bonus Potential:** Eligible for bonus of up to 15-30% of annual salary, payable in quarterly increments upon successful completion of goals and objectives to be outlined by the company

This offer is contingent upon your successful completion of a background check as well as you providing us appropriate proof of your identity and eligibility to work in the United States.  We ask that you provide us this proof on your first day of employment because, under Federal law, we must verify your identity and authorization to work in the United States within three (3) days of your hire.  If you have any questions about what forms of proof are appropriate for this purpose, please contact Bryan Crofford, People Director, at 925-433-0512 to obtain a list of acceptable documents.

As a Company employee, you will be expected to abide by Company rules and policies as described in the Company's Employee Handbook and any revisions thereto. You may not disclose confidential Company information to unauthorized third parties, and at no time may you disclose confidential information of a former employee to the Company.

As a Full-Time employee, you will be eligible for the Company's comprehensive employee benefits. Paid time off will be in accordance with the Company's employee handbook, which is defined below.

Assuming an employment commencement date of June 25, 2018, you will be eligible to participate in the Company's Health and Welfare plan beginning on July 1, 2018. This date is based upon the first day of employment.  Currently our group insurance plan includes the following benefits: medical, dental, vision, life/AD&D, STD/LTD and 401(k).  You will receive information via email about how to access your benefit plan options and enroll online.

The Money Source's current paid time off accrual policy states:



## PAID TIME OFF

**Paid Time Off Benefits**

Paid Time Off is available to eligible employees to provide opportunities for rest, relaxation, and personal pursuits. Employees in the following employment classification(s) are eligible to earn and use paid time off as described in this policy:

- Regular full-time employees

The amount of paid time off employees receive each year increases with the length of their active employment as shown in the following schedule:

| Length of Service | Annual PTO Accrual | Maximum Annual Carryover |
|---|---|---|
| 1-2 years | 15 days per year | 180 hours |
| 3-4 years | 20 days per year | 180 hours |
| 5 years and over | 25 days per year | 180 hours |

Employees are eligible to use PTO upon completion of 90 days of employment. Paid Time Off benefits do not accrue when an employee is on unpaid leave or during other periods of unpaid absence.

The length of eligible service is calculated on the basis of a "benefit year." This is the 12-month period that begins when the employee starts to earn vacation time. An employee's benefit year may be extended for any significant leave of absence except military leave of absence. Military leave has no effect on this calculation. (See individual leave of absence policies for more information.)

The full paid time off benefit policy can be found in company employee handbook, which is subject to change from time to time at the sole discretion of the company.

Should you choose to accept this offer of employment, please sign and date below to acknowledge your acceptance and understanding of the terms of this offer of employment and return to the People team (HR@themoneysource.com), no later than five (5) business days following the date of this letter by fax or email, and bring the original with you on your first day of employment.

Your signature below also indicates that you are free to accept our employment offer and are not, in any way, limited, restricted or inhibited by any previous agreement(s) from former employer(s) containing restrictive covenants that may or actually impede upon or adversely affect your ability to work for us or contract with either the Company or any of your former customers or prospective customers.

Please also note that your particular position requires the development of expected performance standards that must be established with Company management on or before your start date. Company management will then conduct routine performance reviews monthly to determine whether your performance levels meet established and agreed upon expectation levels, in accordance with established and agreed upon performance guidelines.



THE MONEY SOURCE

**Your start date will be on Monday, June 25, 2018**. When you arrive on that date, you should report to Donna Ickowski who will be your immediate supervisor.

This letter forms the complete statement of employment between you and the Company. These employment terms supersede any other agreements, understandings, promises, or communications, written or oral, by or on behalf of the Company. However, you should know that nothing contained in this offer of employment, our prior discussions regarding this offer and/or your acceptance hereof, or any of our policies, procedures and/or benefits creates a contract of employment with you or a guarantee of benefits or employment for a specific term. Like all of our employees, your employment is at will and for no definite period of time and just as you may end your employment at any time without notice or cause, so too may the Company end your employment or modify its employment relationship with you at any time without notice or cause.

We are delighted to have you join our team- we look forward to working with you to accomplish great things.

Sincerely,

*Bryan Crofford*

**Bryan Crofford**
**Director, People**
**The Money Source Inc.**

Signed and accepted:

DocuSigned by:
*Maygen Richardson*

Date: 6/7/2018

Maygen Richardson

DocuSign Envelope ID: C1CE2D94-E593-4D4E-8DF0-8D4BF0C48F6D



# CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

*Employee Name:* Maygen Richardson

*Effective Date:* 6/7/2018 , 2018

*Office / Position Location:* Remote

As a condition of my becoming employed (or my employment being continued) by The Money Source Inc., a New York Corporation, or any of its current or future subsidiaries, affiliates, successors or assigns (collectively, the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1.     **Relationship.**  This Confidential Information Agreement (this "Agreement") will apply to my employment relationship with the Company.  If that relationship ends and the Company, within a year thereafter, either reemploys me or engages me as a consultant, I agree that this Agreement will also apply to such later employment or consulting relationship, unless the Company and I otherwise agree in writing.  Any such employment or consulting relationship between the parties hereto, whether commenced prior to, upon or after the date of this Agreement, is referred to herein as the "Relationship."

2.     **Duties.**  I will perform for the Company such duties as may be designated by the Company from time to time or that are otherwise within the scope of the Relationship and not contrary to instructions from the Company.  During the Relationship, I will devote my entire best business efforts to the interests of the Company and will not engage in other employment or in any activities detrimental to the best interests of the Company without the prior written consent of the Company.

3.     **Confidential Information.**

(a)     **Protection of Information.**  I understand that during the Relationship, the Company intends to provide me with information, including Confidential Information (as defined below), without which I would not be able to perform my duties to the Company.  I agree, at all times during the term of the Relationship and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the Relationship, and not to disclose to any person, firm, corporation or other entity, without written authorization from the Company in each instance, any Confidential Information that I obtain, access or create during the term of the Relationship, whether or not during working hours, until such Confidential Information becomes publicly and widely known

and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved. I further agree not to make copies of such Confidential Information except as authorized by the Company.

(b) **Confidential Information.** I understand that "Confidential Information" means information and physical material not generally known or available outside the Company and information and physical material entrusted to the Company in confidence by third parties. Confidential Information includes, without limitation: (i) Company Inventions (as defined below); and (ii) technical data, trade secrets, know-how, research, product or service ideas or plans, software codes and designs, algorithms, developments, inventions, patent applications, processes, formulas, techniques, agreements with third parties, lists of, or information relating to, employees and consultants of the Company (including, but not limited to, the names, contact information, jobs, compensation, and expertise of such employees and consultants), lists of, or information relating to customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), price lists, pricing methodologies, cost data, market share data, marketing plans, licenses, contract information, business plans, financial forecasts, historical financial data, budgets or other business information disclosed to me by the Company either directly or indirectly, whether in writing, electronically, orally, or by observation.

(c) **Third Party Information.** My agreements in this Section 3 are intended to be for the benefit of the Company and any third party that has entrusted information or physical material to the Company in confidence. I further agree that, during the term of the Relationship and thereafter, I will not improperly use or disclose to the Company any confidential, proprietary or secret information of my former employer(s) or any other person, and I agree not to bring any such information onto the Company's property or place of business.

(d) **Other Rights.** This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

4. **Company Property; Returning Company Documents.** I acknowledge and agree that I have no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, files, e-mail messages, and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored or reviewed at any time without notice. I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. I agree that, at the time of termination of the Relationship, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, equipment, other documents or property, or reproductions of any of the aforementioned items developed by me pursuant to the Relationship or otherwise belonging to the Company, its successors or assigns.

5. **Notice to Third Parties.** I agree that during the periods of time during which I am restricted in taking certain actions by the terms of this Agreement (the "Restriction Period"), I shall inform any entity or person with whom I may seek to enter into a business relationship (whether as an owner, employee, independent contractor or otherwise) of my contractual obligations under

-2-

this Agreement. I also understand and agree that the Company may, with or without prior notice to me and during or after the term of the Relationship, notify third parties of my agreements and obligations under this Agreement. I further agree that, upon written request by the Company, I will respond to the Company in writing regarding the status of my employment or proposed employment with any party during the Restriction Period.

      6.   **Non-Solicitation of Employees, Consultants and Other Parties.** As described above, I acknowledge and agree that the Company's Confidential Information includes information relating to the Company's employees, consultants, customers and others, and that I will not use or disclose such Confidential Information, or solicit any of the following parties, except as authorized by the Company. I further agree as follows:

      (a)   **Employees, Consultants, Clients.** I agree that during the term of the Relationship, and for a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, I shall not, directly or indirectly, solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for myself or for any other person or entity.

      (b)   **Other Parties.** I agree that during the term of the Relationship, I will not negatively influence any of the Company's clients or customers from purchasing Company products or services or solicit or influence or attempt to influence any client, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company. In addition, I acknowledge that the Company has valuable Trade Secrets (as defined by applicable law from time to time) to which I will have access during the term of the Relationship. I understand that the Company intends to vigorously pursue its rights under applicable Trade Secrets law if, during a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, I solicit or influence or attempt to influence any client, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company. Thereafter, the Company intends to vigorously pursue its rights under applicable Trade Secrets law as the circumstances warrant.

      7.   **At-Will Relationship.** I understand and acknowledge that, except as may be otherwise explicitly provided in a separate written agreement between the Company and me, my Relationship with the Company is and shall continue to be at-will, as defined under applicable law, meaning that either I or the Company may terminate the Relationship at any time for any reason or no reason, without further obligation or liability, other than those provisions of this Agreement that explicitly continue in effect after the termination of the Relationship.

      8.   **Representations and Covenants.**

      (a)   **Facilitation of Agreement.** I agree to execute promptly, both during and after the end of the Relationship, any proper oath, and to verify any proper document, required to carry out the terms of this Agreement, upon the Company's written request to do so.

      (b)   **No Conflicts.** I represent that my performance of all the terms of this Agreement does not and will not breach any agreement I have entered into, or will enter into, with

-3-

any third party, including without limitation any agreement to keep in confidence proprietary information or materials acquired by me in confidence or in trust prior to or during the Relationship. I will not disclose to the Company or use any inventions, confidential or non-public proprietary information or material belonging to any previous client, employer or any other party. I will not induce the Company to use any inventions, confidential or non-public proprietary information, or material belonging to any previous client, employer or any other party. I acknowledge and agree that I have listed on Exhibit A all agreements (*e.g.,* non-competition agreements, non-solicitation of customers agreements, non-solicitation of employees agreements, confidentiality agreements, inventions agreements, etc.), if any, with a current or former client, employer, or any other person or entity, that may restrict my ability to accept employment with the Company or my ability to recruit or engage customers or service providers on behalf of the Company, or otherwise relate to or restrict my ability to perform my duties for the Company or any obligation I may have to the Company. I agree not to enter into any written or oral agreement that conflicts with the provisions of this Agreement.

(c) **Voluntary Execution.** I certify and acknowledge that I have carefully read all of the provisions of this Agreement, that I understand and have voluntarily accepted such provisions, and that I will fully and faithfully comply with such provisions.

9. **Electronic Delivery. Nothing herein is intended to imply** a right to participate in any of the Company's equity incentive plans, however, if I do participate in such plan(s), the Company may, in its sole discretion, decide to deliver any documents related to my participation in the Company's equity incentive plan(s) by electronic means or to request my consent to participate in such plan(s) by electronic means. I hereby consent to receive such documents by electronic delivery and agree, if applicable, to participate in such plan(s) through an on-line or electronic system established and maintained by the Company or a third party designated by the Company.

10. **Miscellaneous.**

(a) **Governing Law: Jurisdiction and Venue.** This Agreement, for all purposes, including but not limited to its validity, interpretation, construction and performance, all acts and transactions pursuant hereto, and the rights and obligations of the parties hereto, shall be governed, construed and interpreted in accordance with the laws of the State of New York, without regard or giving effect to the principles of conflict of laws. Any action or proceeding by either of the parties to enforce this Agreement shall be brought only in a state or federal court located in the state of New York, in the counties of Nassau or Suffolk. The parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

(b) **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the Company and me relating to its subject matter and merges all prior discussions between us. No amendment to this Agreement will be effective unless in writing signed by both parties to this Agreement. The Company shall not be deemed hereby to have waived any rights or remedies it may have in law or equity, nor to have given any authorizations or waived any of its rights under this Agreement, unless, and only to the extent, it does so by a specific writing signed by a duly authorized officer of the Company, it being understood that, even if I am an officer of the Company, I will not have authority to give any such authorizations or waivers for the Company under this Agreement without specific approval by the Board of

-4-

Directors. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

(c) **Successors and Assigns.** This Agreement will be binding upon my heirs, executors, administrators and other legal representatives, and my successors and assigns, and will be for the benefit of the Company, its successors, and its assigns.

(d) **Notices.** Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and shall be deemed sufficient when delivered personally or by overnight courier or sent by email, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address as set forth on the signature page, as subsequently modified by written notice, or if no address is specified on the signature page, at the most recent address set forth in the Company's books and records.

(e) **Severability.** If one or more of the provisions in this Agreement are deemed void or unenforceable to any extent in any context, such provisions shall nevertheless be enforced to the fullest extent allowed by law in that and other contexts, and the validity and force of the remainder of this Agreement shall not be affected. The Company and I have attempted to limit my right to use, maintain and disclose the Company's Confidential Information, and to limit my right to solicit employees and customers only to the extent necessary to protect the Company from unfair competition. Should a court of competent jurisdiction determine that the scope of the covenants contained in Section 6 exceeds the maximum restrictiveness such court deems reasonable and enforceable, the parties intend that the court should reform, modify and enforce the provision to such narrower scope as it determines to be reasonable and enforceable under the circumstances existing at that time.

(f) **Remedies.** I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm, and therefore I agree that the Company will be entitled to seek extraordinary relief in court, including, but not limited to, temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security (or, where such a bond or security is required, I agree that a $1,000 bond will be adequate), in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this Agreement.

(g) **Advice of Counsel.** I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

(h) **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement.

**\*Nothing Further on this Page – Signature Page Below\***

**IN WITNESS WHEREOF, t**he parties have executed this Agreement on the respective dates set forth below, to be effective as of the Effective Date first above written.

**THE COMPANY:**

THE MONEY SOURCE INC.

By:_____

Stavros Papastavrou, Chairman

Address:  135 Maxess Road
Melville, New York 11747

**EMPLOYEE:**

DocuSigned by:

*Maygen Richardson*

(Signature) 3431...

Maygen Richardson

(Full Legal Name)

FULL ADDRESS:
3511 Summerhill Drive, Cottonwood Heights, UT 84121

Email: MAYGENRICHARDSON@GMAIL.COM

Date of Birth: 05/01/1984

Phone Number: 801-347-1947

Last 4 of Social Security #: 4464

Dated: _____6/7/2018_____, 2018

-6-

## EXHIBIT A

### CONFLICTING AGREEMENTS DISCLOSED UNDER SECTION 8(b)

The following is a list of all agreements, if any, with a current or former client, employer, or any other person or entity, that may restrict my ability to accept employment with the Company or my ability to recruit or engage customers or service providers on behalf of the Company, or otherwise relate to or restrict my ability to perform my duties for the Company or any obligation I may have to the Company:

Signature of Employee: _Maygen Richardson_

B490DA20EA83431...

Print Name of Employee: Maygen Richardson

Dated: 6/7/2018 , 2018

-7-



## Background Investigation Acknowledgment

Please be sure to click on the link provided in the body of your offer letter email, to complete the required background investigation.

By signing below, you acknowledge that you are aware of this requirement, as part of your offer acceptance and will promptly complete this task, upon said offer acceptance.

DocuSigned by:

*Mayyen Richardson*

Signature

6/7/2018

Date

EXHIBIT 3

# Fwd: Copy of your background report



---------- Forwarded message ----------
From: **Checkr** <no-reply@checkr.com>
Date: Thu, Jun 7, 2018 at 12:56 PM
Subject: Copy of your background report
To: <maygenrichardson@gmail.com>

Hello Maygen Richardson,

Attached is a copy of your background report.

The company that initiated this background check has received a copy of the report as well. If you have any questions about your status with that company, please contact them directly.

A Summary of Your Rights Under the Fair Credit Reporting Act is attached and can also be found here.

Checkr will have no further updates available for you, as your background check is now complete.

Thank you,

Checkr Inc

https://applicant.checkr.com

**Report Summary**

| | | |
|---|---|---|
| SSN Trace | Jun 7, 2018 | Clear |
| Sex Offender Search | Jun 7, 2018 | Clear |
| Global Watchlist Search | Jun 7, 2018 | Clear |
| National Criminal Search | Jun 7, 2018 | Clear |
| County Criminal Searches | | Clear |

## Report information

Report status  Clear

| First name | Middle name | Last name | Date of birth |
|---|---|---|---|
| Maygen | - | Richardson | May 01, XXXX |

| Phone | Zipcode | Email | Social Security # |
|---|---|---|---|
| 8013471947 | 84121 | maygenrichardson@gmail.com | XXX-XX-4464 |

| Driver license | Previous driver license |
|---|---|
| - | - |

| Created at | Completed at |
|---|---|
| Jun 7, 2018 6:42 PM | Jun 7, 2018 6:55 PM |

**SSN Trace**  Clear

**Sex Offender Search**  Clear

**Global Watchlist Search**  Clear

**National Criminal Search**  Clear

**County Criminal Searches**  Clear

**Montgomery, TX**  Clear

# Checkr

One Montgomery Street, Suite 2000, San Francisco, CA 94104
applicants.checkr.com - (844) 824-3257

EXHIBIT 4

# Fwd: FW: MSP Credentials NEW Hire - Maygen Richardson



---------- Forwarded message ---------
From: **Donna Ickowski** <Donna.Ickowski@themoneysource.com>
Date: Thu, Jun 21, 2018 at 12:56 PM
Subject: FW: MSP Credentials NEW Hire - Maygen Richardson
To: Maygen Richardson <maygenrichardson@gmail.com>

YOU ARE SET UP!!!!

**From:** Argyle Watterston
**Sent:** Thursday, June 21, 2018 1:57 PM
**To:** Maygen Richardson <Maygen.Richardson@TheMoneySource.com>
**Cc:** Donna Ickowski <Donna.Ickowski@TheMoneySource.com>
**Subject:** MSP Credentials NEW Hire - Maygen Richardson
**Importance:** High

Maygen,

Welcome aboard TMS, Please find your credentials for access to the Director/MSP application

MSP User ID = **MXMRI**

Temp Password = Today#01

Link: https://eportal.fnfismd.com         ......... You must open it in Internet Explorer

- You **will** need to change this password upon first logon. Please use the following rules:

The following four (4) requirements will go into effect for password requirements. All four (4) requirements must be met:

- Password length MUST be eight (8) characters
- A minimum of 1 special character– only hashtag (#), at sign (@), or dollar sign ($) can be used
- A minimum of 1 alphabetic character

A minimum of 1 numeric character


cid:image001.png@01D38888.B3C1D1F0

**Argyle Watterston**
MSP Administrator | Technology Office
argyle.watterston@themoneysource.com

themoneysource.com

T 602-218-5467

NMLS #6289

**CONFIDENTIALITY NOTE:** This communication and any attachments hereto contain information that may be privileged, confidential, and/or exempt from disclosure under applicable law. The information contained herein is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient, or the employee or agent entrusted with the responsibility of delivering the message to the intended recipient, please note that any disclosure, copying, or distribution of this transmission is strictly prohibited. If you have received this communication in error please delete or destroy all copies of it and notify the sender immediately. In addition, although precautions have been taken to ensure that the data included herein is free from viruses or other malicious content, we have not verified that such is indeed the case and disclaim any responsibility attributable thereto.

EXHIBIT 5

Case 2:18-cv-06445-JMA-AKT   Document 2-1   Filed 09/17/18   Page 28 of 28 PageID #: 31
# Fwd: Offer Rescinded - Please Read



---------- Forwarded message ---------
From: Bryan Crofford <Bryan.Crofford@themoneysource.com>
Date: Fri, Jun 22, 2018, 3:01 PM
Subject: Offer Rescinded - Please Read
To: Maygen Richardson <maygenrichardson@gmail.com>

Dear Maygen,

Our People Resources representatives have attempted to reach you by phone albeit unsuccessfully.  At this time, please be advised TMS has decided to rescind your offer of employment, effective immediately.  As such, please do not report as originally instructed, and kindly acknowledge your receipt of this correspondence at your earliest convenience.  Should you have any questions regarding this notification, please contact our General Counsel's office at (631) 449-7037, or by email:  frank.giglio@themoneysource.com.

Thank you,

cid:image001.png@01D38888.B3C1D1F0

**BRYAN CROFFORD**
Director | People Team
bryan.crofford@themoneysource.com
themoneysource.com

T  925.433.0512